UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CHILDREN'S NETWORK, LLC d/b/a PBS KIDS  :
SPROUT; COMCAST CHILDREN'S NETWORK      :
HOLDINGS, LLC; and COMCAST PROGRAMMING  :
HOLDINGS, LLC,                          :        10 Civ. 2511 (DLC)
                          Plaintiffs,   :
             -v-                        :        OPINION & ORDER
                                        :
PIXFUSION LLC,                          :
                          Defendant.    :
                                        :
----------------------------------------X

APPEARANCES:

For plaintiffs:

Brian L. Ferrall
Ashok Ramani
Melissa J. Kiksch
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Monica Bhattacharyya
Michael E. Hagenson
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

For defendant:

Amr O. Aly
Marc A. Lieberstein
Frederick L. Whitmer
Kilpatrick Stockton LLP
31 West 52nd Street, 14th Floor
New York, NY 10019

DENISE COTE, District Judge:

Defendant PixFusion, LLC ("PixFusion") has moved to transfer this declaratory judgment action to the Eastern District of Texas where patent infringement litigation involving these parties is pending.  By Order dated June 17, 2010, defendant's motion was denied.  This Opinion provides the factual and legal basis for the June 17 Order.


BACKGROUND

On March 19, 2010, Children's Network, LLC d/b/a/ PBS KIDS Sprout ("Sprout"), and its parent companies, Comcast Children's Network Holdings LLC and Comcast Programming Holdings, LLC (the "Comcast plaintiffs," and collectively with Sprout, the "plaintiffs"), filed this action.  Plaintiffs seek a declaratory judgment that U.S. Patent Nos. 5,623,587 and 6,351,265 (collectively, the "patents-in-suit") assigned to PixFusion are invalid and that certain applications on Sprout's website do not infringe those patents.  The patents-in-suit relate to a method for producing a personalized electronic image used in creating photo-personalized videos.

Sprout is a Delaware limited liability company with its principal, and only, place of business in Philadelphia, Pennsylvania.  Nearly all of Sprout's employees work in its Philadelphia office, where essentially all of its business

records are located.  The Comcast plaintiffs are holding
companies whose operations are managed by Comcast Programming
Management, LLC from its single office in Philadelphia.  All of
the documents in the possession, custody, or control of the
Comcast plaintiffs are located in Philadelphia or Delaware.
Neither Sprout nor the Comcast plaintiffs have any employees or
offices in Texas.

PixFusion is a Delaware limited liability company with its
principal place of business in New York, New York.  PixFusion's
management is located in New York, as are all its documents
related to the patents-in-suit.  The patents-in-suit were
prosecuted by two attorneys who live and work in the Southern
District of New York.  Both patents list New York, New York as
the home of the named inventor, who now resides in Maine, and is
not currently employed by PixFusion.  PixFusion has previously
filed several lawsuits for infringement of the patents-in-suit
in the Southern District of New York.

Sprout operates the PBS KIDS Sprout cable channel and
companion Sprout website, which was launched in its present form
in 2007.  Users of the Sprout website can create personalized
videos by uploading images of themselves and inserting the
images into videos involving characters from programs on the
Sprout channel.  Three of the software applications accessible
through the Sprout website offer this feature (the "photo-

personalized applications"). One of the photo-personalized applications was designed and built by Jam Media Limited ("JAM"), a company located in Dublin, Ireland. The other two photo-personalized applications on the Sprout website were designed and built by a third-party located near Philadelphia.

On August 4, 2009, Sprout, PixFusion, and Mercury Capital Partners ("Mercury")[1], PixFusion's investor, met for the first time to discuss the possibility of Sprout or the Comcast plaintiffs purchasing or investing in PixFusion. During the meeting, PixFusion showcased the patents-in-suit as assets contributing to its potential value as an investment. At PixFusion's request, on August 19, the parties entered into a nondisclosure agreement so that PixFusion could provide Sprout with its financial information. The parties met again in late August or early September, and then again on September 29. At the September 29 meeting, PixFusion claimed for the first time that Sprout needed to obtain a license from PixFusion for the photo-personalized applications on Sprout's website. On October 29, PixFusion sent a formal proposal to plaintiffs, including a demand that Sprout obtain a license for the patents-in-suit.

On December 18, the parties discussed PixFusion's proposal by telephone. Plaintiffs explained their position that Sprout

---

[1] Mercury has two offices, one in White Plains, New York, and another in Buffalo, New York.

did not need a license because the Sprout website did not use
any of the purported inventions claimed by the patents-in-suit,
and because the patents were invalid in light of various prior
art references.  PixFusion responded that it had successfully
enforced its patents before and would not hesitate to do so
again.  The parties ended the call by agreeing that PixFusion
would provide a claim chart demonstrating how PixFusion believed
Sprout's website applications infringed the patents-in-suit.

Later that day, PixFusion filed a complaint in the Eastern
District of Texas alleging infringement of the patents-in-suit
(the "Texas action").  PixFusion did not inform plaintiffs of
the lawsuit during the parties' December 18 telephone call.
The complaint in the Texas action named Oddcast, Inc.; American
Express Company; Asus Computer International; ConAgra Food,
Inc.; Mattel, Inc.; Veev Spirits LLC; and WidgetBar Search LLC
as defendants.  Neither Sprout nor the Comcast plaintiffs were
named as defendants.

Over two months later, PixFusion sent a letter to
plaintiffs dated February 23, 2010, accompanied by a claim chart
for the patents-in-suit.  The letter referred to the Texas
action and stated that "any further infringing conduct by
Comcast may be viewed as willful infringement."  The letter
concluded by reiterating PixFusion's desire "to negotiate a
business resolution to this matter."  The letter did not

indicate that PixFusion intended to file an infringement action against plaintiffs.

The parties scheduled a telephone call for March 19 to discuss PixFusion's proposal regarding the patents-in-suit. During the call, plaintiffs informed PixFusion that they had filed this declaratory judgment action earlier that day.  Three weeks later, on April 9, PixFusion filed an amended complaint in the Texas action adding Sprout and the Comcast plaintiffs as defendants.  On May 14, PixFusion filed the instant motion to transfer this action to the Eastern District of Texas.  The motion became fully submitted on June 8.

DISCUSSION

A.   Legal Background

The relevant law is well established.[2]  Section 1404 provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  District courts have "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are

_____

[2] The Federal Circuit has held that, in reviewing a ruling on a motion to transfer by a district court, it applies the law of the appropriate regional circuit because it is a procedural matter.  See, e.g., Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

considered on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  The movant bears the burden of establishing, by "clear and convincing evidence," that a transfer of venue is warranted.  N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010).

If the transferee court would also have jurisdiction over the case, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate.[3]  In making that determination, a court considers:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Id. at 112.  A court may also consider "the forum's familiarity with the governing law" and "trial efficiency and the interest of justice, based on the totality of the circumstances."  Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998).

_____

[3] For purposes of this motion, plaintiffs do not contest that this case could have been brought in the Eastern District of Texas.  Plaintiffs do not concede, however, that the Eastern District of Texas has personal jurisdiction over them or that venue is proper there even if they are subject to personal jurisdiction.  PixFusion's sole basis for asserting that this action could have been brought in the Eastern District of Texas is that Sprout's website is accessible to consumers there.

If there are duplicative actions, a court must also consider whether the first-filed rule applies.  "The first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority."  N.Y. Marine, 599 F.3d at 112 (citation omitted); see also D.H. Blair, 462 F.3d at 106.  "This rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum."  Emp'rs Ins. of Wausau v. Fox Ent't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (citation omitted) ("Wausau").

There are two recognized exceptions to the first-filed rule: "(1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances' warrant giving priority to the second suit."  Id. (citation omitted); see also N.Y. Marine, 599 F.3d at 112.  "Special circumstances include manipulative or deceptive behavior on the part of the first-filing plaintiff."  N.Y. Marine, 599 F.3d at 112.  The party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception.

Because the "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue," Wausau, 522 F.3d at 275, the first-filed rule does not supersede the inquiry into

the balance of convenience under § 1404(a).  See N.Y. Marine,
599 F.3d at 113 ("[T]he convenience factors compose the
'centrality' of adjudicating transfer motions.").  Consequently,
where the first-filed rule is invoked in the context of a motion
to transfer, courts in this district consider the rule as one
among several factors in the overall calculus.  See, e.g., Am.
S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am.,
Inc., 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007); Schnabel v.
Ramsey Quantitative Systems, Inc., 322 F. Supp. 2d 505, 514
(S.D.N.Y. 2004).


B.   The Balance of Convenience does not Warrant Transfer

     Transfer of this action to the Eastern District of Texas is
unwarranted.  All of the § 1404 factors either weigh against
transfer, or are neutral, and thus the balance of convenience
tilts heavily in favor of retaining the action in this district.
The first-filed rule also weighs against transfer.


     1.   Convenience of the Parties and Witnesses;
          Availability of Compulsory Process

The Southern District of New York is by far a more
convenient forum than the Eastern District of Texas for the
parties and witnesses.  PixFusion's sole corporate office is
located in this district, less than three miles from this
courthouse.  All of PixFusion's employees who may serve as

witnesses in this action are located in New York.  The corporate offices of Sprout and the Comcast plaintiffs are located in Philadelphia, less than 100 miles from this courthouse, and thus much closer than Texas.  Nearly all of the Sprout employees who may serve as witnesses work in Sprout's Philadelphia office.

In addition, all of the third parties who have been identified as potential witnesses live and work in or near New York, or at least closer to New York than Texas.  Two of the most likely non-party witnesses, the prosecuting attorneys for the patents-in-suit, are within the subpoena power of this Court.  By contrast, PixFusion has not identified a single potential non-party witness who could be compelled to testify in the Eastern District of Texas.[4]  The named inventor on both of the patents-in-suit lives in Maine, much closer to New York than Texas.  The Southern District of New York is also more convenient for any witnesses from JAM, which is located in Dublin, Ireland, or Mercury, which has offices in White Plains and Buffalo, New York.

PixFusion's argument that the Eastern District of Texas is "centrally located" because other parties in the Texas action are dispersed throughout the country is irrelevant in determining which forum is more convenient for the parties and

---

[4] One of the two prosecuting attorneys has submitted a declaration stating that he will not travel to Texas voluntarily.

witnesses in <u>this</u> action.[5]  All of the parties and witnesses to
this dispute are either located in or near New York, or,
potentially, Ireland.  Further, the only witnesses who could be
compelled to testify in both fora are the employees of
PixFusion, Sprout, and the Comcast plaintiffs; none of the
potential third-party witnesses could be compelled to testify in
Texas.  As for the party witnesses, PixFusion's intent to haul
them to Texas to testify in its later-filed infringement action
does not render that forum more convenient for those witnesses
or their employers.


2.  <u>Location of Relevant Documents and Sources of Proof</u>

Like the parties and witnesses, all of the relevant
documents and potential sources of proof are in New York, or at
least closer to New York than Texas.  PixFusion's documents and
records relating to the patents-in-suit are in New York.  Sprout
and the Comcast plaintiffs maintain all of their records,
including those concerning Sprout's website, in Philadelphia and

---

[5] PixFusion assumes that because the <u>parties</u> it has joined in the
Texas action are "scattered throughout the country," the Eastern
District of Texas is more convenient for the <u>witnesses</u> in that
action.  PixFusion has not provided any evidence, however, that
any of the witnesses in the Texas action are, in fact, located
in that district.  In rejecting a similar argument on mandamus,
the Court of Appeals for the Federal Circuit recently held that
the centrality of the Eastern District of Texas should not be a
consideration under § 1404(a) where no witnesses are located in
that forum.  <u>In re Genentech</u>, 566 F.3d 1338, 1344 (Fed. Cir.
2009).

Delaware; none are in Texas.  Mercury's documents, if needed,
are also in New York.  It is likely that all of JAM's records
are located in Dublin, Ireland, which is closer to New York than
Texas.

PixFusion argues that this factor nonetheless favors
transfer because the parties in the Texas action "will be
accumulating all relevant documents and gathering those
documents in that forum."  The fact that the relevant documents
may be brought to Texas at some point during that litigation
does not, however, make them "Texas documents," and therefore
does not shift the weight of this factor.


3.   Plaintiffs' Chosen Forum

The Southern District of New York is the plaintiffs' chosen
forum, "a decision that is given great weight."  D.H. Blair, 462
F.3d at 107.  "[U]nder 28 U.S.C. § 1404(a), the plaintiff's
choice of forum should not be disturbed unless the balance in
the defendant's favor is shown by clear and convincing
evidence."  N.Y. Marine, 599 F.3d at 114 (citation omitted).
"The plaintiff's choice is entitled to less deference, however,
where the forum is not the plaintiff's home and the cause of
action did not arise in the forum."  Legrand v. City of New
York, No. 09 Civ. 9670 (DLC), 2010 WL 742584, at *2 (S.D.N.Y.
Mar. 3, 2010).  Nevertheless, as the Second Circuit has

observed, "[t]he more it appears that a . . . plaintiff's choice
of forum has been dictated by reasons that the law recognizes as
valid, the greater the deference that will be given to the
plaintiff's forum choice." Iragorri v. United Tech. Co., 274
F.3d 65, 71-72 (2d Cir. 2001) (forum non conveniens).

While the Southern District of New York is not plaintiffs'
home district, there is no indication that plaintiffs' choice of
forum was motivated by forum shopping.  Plaintiffs had several
valid reasons for selecting this district, including the fact
that PixFusion's only corporate office is located here and the
patents-in-suit were prosecuted by attorneys who live and work
in this district.  Because plaintiffs seek to invalidate the
patents-in-suit, the choice of this district, where the
documentation concerning the patents is kept, and which is
closer to the current residence of the inventor of the patent,
was eminently reasonable.  Accordingly, plaintiffs' choice of
forum weighs strongly in favor of retention of the action in
this district.

### 4. First-filed Rule

Because plaintiffs filed this action before PixFusion
amended the complaint in the Texas action, this action is
entitled to priority pursuant to the first-filed rule.
Plaintiffs filed this declaratory judgment action on March 19,

2010, approximately three weeks before PixFusion added Sprout
and the Comcast plaintiffs as defendants in the Texas action.
As such, this Court was the first to acquire jurisdiction over
the dispute between PixFusion and the plaintiffs.[6]

PixFusion argues that the first-filed rule should not apply
and that plaintiffs' choice of forum should be given no weight
because plaintiffs filed this action in an attempt to gain an
unfair advantage during the parties' negotiations.  PixFusion
contends that plaintiffs "took advantage" of its repeated
attempts to reach an amicable resolution and "raced to the
courthouse" to file this action in their preferred forum.

"Special circumstances" justifying departure from the
first-filed rule exist "where the first-filed lawsuit is an
improper anticipatory declaratory judgment action."  Wausau, 522
F.3d at 275.  "Another special circumstance is where forum
shopping alone motivated the choice of the situs for the first
suit."  Id. (citation omitted).  These exceptions to the rule
are based on the notion that "a plaintiff should not be
permitted to file a preemptive action in order to deprive the
'natural plaintiff' of its choice of forum."  Id. at 276 n.4.
Nevertheless, "in order for a declaratory judgment action to be

---

[6] PixFusion does not argue, nor could it, that the amendment of
the complaint to add the plaintiffs in this action to the Texas
action "relates back" to its original complaint pursuant to Fed.
R. Civ. P. 15(c).

anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action."  Id. at 276.

PixFusion has failed to show that this lawsuit is an improper anticipatory declaratory judgment action.  Although the parties were involved in negotiations involving the patents-in-suit, PixFusion does not assert that either side agreed to forbear from filing suit.  Further, PixFusion has not demonstrated that plaintiffs were trying to forestall PixFusion from filing suit by giving the appearance of continuing negotiations in order to gain a tactical litigation advantage.  During the course of the parties' negotiations, plaintiffs requested that PixFusion explain the basis for its allegation that Sprout's website infringed the patents-in-suit.  Only after PixFusion provided its claim chart on February 23 were plaintiffs in a position to evaluate PixFusion's infringement claim.  There is no evidence that the parties had any communications regarding the patents-in-suit between February 23 and March 19, when plaintiffs filed this action.  Thus, there is no indication of any manipulative or deceptive behavior by the plaintiffs.

When plaintiffs filed this action on March 19, it was far from clear that PixFusion intended to sue plaintiffs.  The February 23 letter, on which PixFusion relies to establish an

15

improper motive on plaintiffs' part, falls short of the threshold required to constitute a "direct threat" of litigation.  While the letter stated that PixFusion "reserve[d] the right to enforce all of [its] claims under all of [its] patents," it did not include specific warnings as to any deadlines or identify a possible forum for subsequent legal action.  Instead, the letter made reference to the pending Texas action and advised that "any further infringing conduct by Comcast <u>may</u> be viewed as willful infringement."  (Emphasis added.)  This warning was equivocal and is fairly viewed as an attempt by PixFusion to gain leverage in the parties' negotiations.  Indeed, the letter closed by reiterating PixFusion's desire to "negotiate a business resolution" to the matter.  Further, the letter stated that "formal enforcement efforts" were being handled by PixFusion's outside counsel, while the author of the letter, a PixFusion board member, handled "business discussions" concerning the patents-in-suit. Thus, if PixFusion intended to threaten formal legal action, plaintiffs could have reasonably expected that the letter would have been sent by PixFusion's outside counsel, not a board member.

In addition, PixFusion has failed to show that plaintiffs' choice of forum was motivated solely by forum shopping.  As previously noted, plaintiffs had sound reasons for filing their

declaratory judgment action in this district. While PixFusion accuses plaintiffs of forum shopping, that accusation is more properly directed at PixFusion itself. Prior to the Texas action, PixFusion had filed multiple infringement actions concerning the patents-in-suit in this district. In fact, the Texas action appears to be the first time that PixFusion has ventured outside its home district to enforce the patents-in-suit.

5. Locus of Operative Facts

In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced. See, e.g., TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 175 (S.D.N.Y. 2009); Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006).

In this case, Sprout's website was designed, built, and maintained at its corporate office in Philadelphia. Two of the three photo-personalized applications on Sprout's website at issue here were designed by a third-party located near Philadelphia; the third application was designed by JAM in Dublin, Ireland. The patents-in-suit originated in the Southern District of New York. Both were prosecuted by attorneys in the Southern District of New York, and both list "New York, New

17

York" as the home of the named inventor.  Because both the
validity of, and Sprout's alleged infringement of, the patents-
in-suit are at issue here, the loci of operative facts are New
York, Philadelphia, and, potentially, Ireland.  As such, this
factor favors retention of the action in this district.

     6.   <u>Relative Means of the Parties</u>

     With respect to the relative means of the parties,
PixFusion points to the purported "gross disparity" between it,
a "small, privately-owned company," and Sprout's ultimate
parent, Comcast, the "largest cable company in the United
States."  PixFusion has not, however, introduced any evidence to
suggest that retention of the action in this district would pose
an undue financial burden.  <u>See</u> <u>TouchTunes Music</u>, 676 F. Supp.
2d at 176 ("A party arguing for or against a transfer because of
inadequate means must offer documentation to show that transfer
(or lack thereof) would be unduly burdensome to his finances."
(citation omitted)).  To the contrary, litigating the action in
this district is likely to be less costly for both PixFusion and
the plaintiffs due to this district's proximity to the parties,
witnesses, and relevant documents.  To the extent that
litigating a duplicative action poses any additional financial
burden, such costs are attributable to PixFusion's own decision

to litigate its infringement claims against plaintiffs as part
of the Texas action.  Thus, this factor weighs against transfer.


7.   Relative Familiarity with the Governing Law

As PixFusion acknowledges, this Court is as familiar with
federal law, including patent law, as courts in the Eastern
District of Texas.  This factor is therefore neutral.  PixFusion
nevertheless contends that this factor favors transfer because
the court overseeing the Texas action "will already be well-
acquainted with the governing law, patents and claimed
infringement," and thus will have a "head start" on this Court.
Further, according to PixFusion, this factor favors transfer
because the Eastern District of Texas is "well-known for
resolving patent disputes" and is "especially equipped to
efficiently handle" this action given its "local rules tailored
to address patent claims."

Contrary to PixFusion's contentions, the Eastern District
of Texas is no better "equipped" to handle patent cases than
courts in this district.  The fact that the Eastern District of
Texas may be "well-known" among the patent bar is not an
indication of that forum's greater familiarity with the
governing law.  And while PixFusion may find that forum's
"tailored" rules for patent cases advantageous, that is not a

valid basis for transfer.[7]  PixFusion's contention that the

Eastern District of Texas is better "equipped" than the Southern

District of New York to handle patent claims is particularly

disingenuous given that PixFusion has filed all of its previous

infringement actions in this district.  In any event, the

Southern District of New York is as capable as any court of

fairly and efficiently adjudicating this dispute in accordance

with the governing law.

    Moreover, PixFusion provides no support for its assumption

that the court overseeing the Texas action has a "head start"

with respect to the parties' dispute.  In fact, the evidence is

to the contrary.  The docket sheet in the Texas action indicates

that, as of June 16, 2010, neither Sprout nor the Comcast

plaintiffs had even been served with the amended complaint.  Nor

had the Texas court scheduled an initial conference in the Texas

action.  By contrast, on March 31, this Court scheduled a June

18 initial pretrial conference to set a schedule for discovery

and motion practice, and to select a trial date.  Given that the

Texas court had not even heard from the parties by the time the

June 18 conference was held, it is difficult to see how that

---

[7] PixFusion has not explained in what way the Eastern District of
Texas rules uniquely promote the fair and efficient
administration of justice for both plaintiffs and defendants in
either this case or in any patent case.  Customarily, an
individualized scheduling order, like the one already issued
here, is the best tool for the efficient management of a case.

forum "will already be well-acquainted with the governing law, patents and claimed infringement" at issue in this dispute. Thus, denying the motion to transfer will not require this Court to duplicate any effort already expended by the Texas court.

Pursuant to the Scheduling Order issued after the June 18 conference, the parties must identify the disputed claims terms by October 8; file their Markman briefs by October 29 and responses by November 19; complete fact discovery by February 18, 2011; and complete expert discovery by April 29, 2011.  Any motion for summary judgment must be filed by May 27, 2011.  If no motion for summary judgment is filed, the parties must file the Joint Pretrial Order by May 27, 2011.  By contrast, plaintiffs submitted evidence indicating that patent cases filed in the court overseeing the Texas action are scheduled to have Markman hearings in 2011 and jury selection in 2012.  Thus, contrary to PixFusion's contention, prompt resolution of this dispute is more likely to occur in this forum rather than the Eastern District of Texas.


    8.   Trial Efficiency and Interests of Justice

Based on the § 1404 factors and the first-filed rule, and considering the totality of the circumstances, it is clear that trial efficiency and the interests of justice strongly favor retention of the action in this district.  PixFusion argues,

however, that the existence of the Texas action "trump[s] all other considerations" and is alone sufficient to justify transfer.  It is true that the existence of a related action pending in the transferee court typically weighs strongly in favor of transfer.  See, e.g., Dyson, Inc. v. Maytag Corp., No. 06 Civ. 6576 (DLC), 2006 WL 2884921, at *2 (S.D.N.Y. Oct. 11, 2006) ("Dyson"); Int'l Bus. Machs. Corp. v. Fair Isaac Corp., No. 05 Civ. 10296 (DLC), 2006 WL 726034, at *3 (S.D.N.Y. Mar. 23, 2006) ("I.B.M.").  But unlike in Dyson and I.B.M., this action was filed prior to the related action in the proposed transferee forum.  A party cannot manufacture a "related action" in order to manipulate the merits of a transfer motion.  As such, the force of PixFusion's argument is severely undercut here.

Moreover, PixFusion has not shown that the Texas action is, in fact, related to this dispute, except insofar as it involves the same patents.  Neither Sprout nor the Comcast plaintiffs have any affiliation with the other defendants in the Texas action.  Also, PixFusion's claims against the other defendants in the Texas action involve products that are distinct from the photo-personalized applications at issue here.[8]  Joinder of

---

[8] For instance, PixFusion's claims against Disney in the Texas action concern a feature of the "Spaceship Earth" ride at Walt Disney World in which guests have their photos taken during the ride and then insert them into one of several preexisting video

unrelated parties into one action is generally inappropriate where, as here, the infringement of the same patent is alleged, but the products are different.  See, e.g., Pergo, Inc. v. Alloc, Inc., 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003).

To the extent PixFusion's argument is based on the threat of inconsistent judgments, its apprehension is misplaced.  The fact that PixFusion initiated patent infringement litigation in the Eastern District of Texas involving other parties and other products does not entitle it to litigate all disputes concerning those same patents in that forum.  See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 739 (1st Cir. 1977).  In other words, PixFusion cannot use the Texas action as a magnet to attract other cases, which may present very different collateral issues, to a forum where those cases would not otherwise be.  See id. Patent holders often litigate cases and bring claims alleging infringement of the same patent in multiple jurisdictions against different parties.  They are able to avoid discrepancies by application of the doctrine of collateral estoppel and by appealing decisions to the Court of Appeals for the Federal Circuit.  See, e.g., RF Del., Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1259 (Fed. Cir. 2003) (appeal of one claim

---

clips provided by Disney after the ride.  PixFusion has not shown that its claims against any of the other defendants in the Texas action involve website applications like those of Sprout.

construction from two different lower court interpretations of the same patent).

Likewise, PixFusion's purported concern about the possibility of inconsistent claim constructions by the Texas court and this Court is unavailing.  While trial efficiency generally favors litigating the same issues only once and in one forum, in reality, patent disputes often involve a certain degree of parallel litigation.  The existence of a case involving the same patents in another forum is insufficient, on its own, to compel transfer.  This is especially true where, as here, the transferee forum would be much less convenient.  For example, the Federal Circuit recently reversed a district court's dismissal of a first-filed declaratory judgment action which would have "effectively transferr[ed]" the case to the less convenient Eastern District of Texas where an infringement action involving some of the same patents and the same parties was pending.  Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 905 (Fed. Cir. 2008).  The court observed that "[e]ventually, robust consideration of these [§ 1404] factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum."  Id.

Thus, PixFusion's claim that trial efficiency and the interests of justice favor the Eastern District of Texas is

unavailing.  To the extent any additional burden is imposed on the parties, witnesses, or the courts due to the existence of duplicative actions, it can only be attributed to PixFusion's decision to bring its later-filed patent infringement claims in Texas rather than the obviously more convenient forum in New York.  PixFusion is not, however, without recourse.  Its claims against plaintiffs in the Texas action may ultimately be stayed, dismissed, or transferred to this district given that the balance of convenience overwhelmingly favors this forum and the fact that this action was filed first.  The Texas court will likely be amenable to such a disposition.  In fact, in a recent series of opinions, the Court of Appeals for the Federal Circuit has issued writs of mandamus upon finding that courts in the Eastern District of Texas had abused their discretion in refusing to transfer patent cases that, like this one, had no meaningful connection to that forum.  See, e.g., In re Nintendo Co., Ltd., 589 F.3d 1194 (Fed. Cir. 2009); In re Hoffmann-La Roche Inc., 587 F.3d 1333 (Fed. Cir. 2009); In re TS Tech USA Corp., 551 F.3d 1315 (Fed. Cir. 2008).  Thus, the threat of any inconvenience to the parties, witnesses, and the courts is likely to be rendered moot.

CONCLUSION

For these reasons, on June 17, this Court denied the May

14, 2010 motion to transfer this action to the Eastern District

of Texas.

SO ORDERED:

Dated:     New York, New York
           June 30, 2010

_____
                DENISE COTE
           United States District Judge

26